**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| **In re**<br><br>**JAMES F. REARDON and JEANINE M. REARDON,**<br><br>**Debtors** | **Chapter 7**<br>**Case No. 09-22312-FJB** |
| **NATIONAL LUMBER COMPANY,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**JAMES F. REARDON and JEANINE M. REARDON,**<br><br>**Defendants** | **Adversary Proceeding**<br>**No. 16-1050** |

## MEMORANDUM OF DECISION

By its complaint in the above-captioned adversary proceeding, plaintiff National Lumber Company ("National") seeks a determination that the liability, if any, of the defendants and chapter 7 debtors, James F. Reardon ("James") and Jeanine M. Reardon ("Jeanine") (together, "the Reardons" or "the Debtors") to National under two prepetition guarantees as to postpetition extensions of credit is not subject to the discharge the Debtors received in their bankruptcy case. National also seeks a judgment enforcing the guaranty as to the credit in question. For the reasons stated below, I conclude that any liability under one of the guarantees is discharged, that the Debtor has failed to establish that the liability under the other, if any, is subject to the discharge, and that this court lacks subject matter jurisdiction as to National's claim under the surviving guaranty.

**PROCEDURAL HISTORY**

On December 22, 2009, James F. Reardon ("James") and Jeanine M. Reardon ("Jeanine") (together, "the Reardons" or "the Debtors"), husband and wife, filed a joint petition for relief under chapter 7 of the Bankruptcy Code. In the case thereby commenced, they received a discharge under 11 U.S.C. § 727(b). The chapter 7 trustee filed a report of no distribution, and, on July 15, 2010, their case was closed.

On September 30, 2015, the Reardons moved to reopen their case in order to amend the schedule of nonpriority unsecured creditors that they had filed in their case by adding previously omitted creditors, including National and possibly others. Over National's objection, the Court granted the motion and reopened the case, and the Reardons added National to their schedule of creditors.

National then filed the complaint commencing the present adversary proceeding. In it National alleges that in 2007, National demanded and James and Jeanine each gave to National two personal guarantees of extensions of credit by National to the Beechwood Village Realty Trust ("the Trust"); that the Reardons have never revoked these guarantees; that the Reardons did not schedule National as a creditor in their bankruptcy case or give National notice of their bankruptcy filing; and that from December 22, 2009, the date of the Reardons' bankruptcy petition, until about February 2012, National, in reliance on the Reardons' guarantees, sold on credit to the Trust goods having the contractual value of $775,187.09, of which $56,667.24 remains due and owing. On the basis of the facts so alleged, National seeks (i) a declaration that their chapter 7 discharge did not release the Reardons from their liability to National for this debt and (ii) judgment against the Reardons in the amount of $56,667.24, plus interest, attorney's fees, and costs.[1]

---

[1] National does not seek a determination of nondischargeability as to any prepetition extension of credit. Nor does National allege in its complaint that, at the time of their bankruptcy filing, the Reardons had any existing liability to National on their guarantees.

In their answer, the Reardons admit to having executed one of the guarantees, but not both, and they put National to its proof as to the terms of the disputed guaranty (the same being illegible in the copy attached to the complaint). The Reardons further admit that they did not schedule National as a creditor, allege that this omission was inadvertent, not deliberate, allege that National nonetheless had actual knowledge of their bankruptcy filing, admit that they have not revoked their guarantees "except as a matter of law when they filed Chapter 7 bankruptcy," and deny that National relied on their guarantees in extending postpetition credit to the Trust. The Reardons ask that the relief requested be denied on the basis that, by operation of law, their bankruptcy filing extinguished any continuing liability they might otherwise have had to National on the guarantees for postpetition advances of credit.

The complaint was tried in a single day. The Court heard the testimony of five witnesses, received 31 exhibits into evidence, and, at the close of the evidence, heard closing arguments. The Court then received post-trial briefs and proposed findings and conclusions and took the matter under advisement. The following constitute the Court's findings of fact and conclusions of law, entered pursuant to Fed. R. Civ. P. 52(a)(1), made applicable by Fed. R. Bankr. P. 7052.

**JURISDICTION**

This adversary proceeding is, in one of its two parts, a proceeding to determine the dischargeability of a debt. This part arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference (codified in the district court's local rules at L.R. 201, D. Mass.), referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). 28 U.S.C. § 1334(b) (subject to certain exceptions, conferring on the districts courts "original but not exclusive jurisdiction of all civil proceeding arising under title 11 or arising in or related to a case under title 11"). It is core proceeding within the meaning of 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2)(I) (core proceedings include determinations of the dischargeability of particular debts). The bankruptcy court accordingly has authority to enter final

judgment as to the demand for a determination of the dischargeability of the debt. 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.").

In its second part, this adversary proceeding is also a proceeding to recover postpetition obligations under prepetition guarantees. This count does not arise under the Bankruptcy Code. Rather, it arises under Massachusetts law concerning guarantees. The Reardons' defense—that any liability on the guarantees for the postpetition extensions of credit was subject to their chapter 7 discharge—does arise under the Bankruptcy Code, but it can be adjudicated by declaratory relief without need of adjudicating the underlying state law claim. If this bankruptcy defense were successful, it would be dispositive and preclusive of the underlying state law claim. However, if the Court determines that the discharge did not affect liability that might arise under the guarantees postpetition, then the Court would be left with a purely state-law cause of action that does not arise in the bankruptcy case and is not "related to" the bankruptcy case within the meaning of 28 U.S.C. § 1334(b) and § 157(a)-(c). *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984) ("related to" jurisdiction extends to any matter that conceivably may have an effect on the estate in bankruptcy). Accordingly, I hold that this second part of the relief requested is outside the subject matter bankruptcy jurisdiction given the district court in 28 U.S.C. § 1334(b) and referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a) and must be dismissed for lack of subject matter jurisdiction.

**FINDINGS OF FACT**

The parties tried this matter because they disagreed about two factual issues: whether National had actual knowledge of the Reardons' bankruptcy filing; and whether the Reardons' omission of National from their bankruptcy schedules, and failure to give National written notice of their bankruptcy filing, were done knowingly and with intent to conceal the filing from National and to mislead National

about their continuing creditworthiness and responsibility under the prepetition guarantees. For reasons discussed below, neither of these facts is relevant to the dischargeability of the debt in question.[2] I therefore make no findings on these issues.

The Beechwood Village Realty Trust ("Beechwood") was formed by a declaration of trust dated May 11, 2006. At all relevant times, its trustee was Jeffrey S. Reale ("Reale"), and its business was the development of some 79 residential condominium units. Jeanine is Reale's sister and worked in Beechwood's office; her husband, James, was the project manager for the Beechwood Village development.

On August 28, 2006, Beechwood applied for credit with National, using a two-page form supplied by National. The form is entitled "Credit Application and Agreement." The form was completed by Reale for Beechwood. The only copy of this form in evidence is Exhibit 1. On a prominently-placed line on which to specify the amount of "Credit Line Requested," the form as completed says "5K," meaning $5,000. The second page of the form has two parts. The top portion is entitled "Terms of Agreement." Under this section are signature lines, and the only signature appearing here is Reale's. Immediately beneath the signature lines for the Terms of Agreement commences the second section, entitled "Guaranty" ("the First Guaranty"), followed by signature lines for up to three guarantors. Reale signed his name on the first of these lines.

Later, National requested that James and Jeanine also guaranty Beechwood's account. By facsimile transmission, National sent the same form, as completed by Reale, to the Reardons to sign as guarantors. At some point—precisely when is unclear, but in any event before the Reardons filed their bankruptcy petition—signatures purporting to be those of James and Jeanine were entered on the second and third guarantor lines, and the form was returned to National, probably again by facsimile transmission. Jeanine concedes that the signature purporting to be hers is in fact her signature, and I

---

[2] The parties do not argue otherwise.

accordingly find that she did sign it. James denies that the signature purporting to be his is his signature.[3]

Owing in large measure to the repeated transmission of the form that became Exhibit 1 by facsimile transmission, the Guaranty portion of Exhibit 1 is largely illegible. Some terms of the Guaranty are also obscured, effectively blacked out, by a large arrow that was affixed to the form, before facsimile transmission, to indicate where the Reardons were to sign. Certainly the Guaranty is too illegible to permit a finder of fact to discern its terms with any fair degree of confidence. The same is true for the "Terms of Agreement" section that precedes the Guaranty on the second page of Exhibit 1. In addition, it is unclear to me, not proven by a preponderance of the evidence, that the second page was legible to the Reardons when Jeanine and perhaps also James signed it as guarantors. I have no extrinsic evidence of the terms of this guaranty. It is undisputed that neither James nor Jeanine has ever revoked whatever guaranty each may have given in Exhibit 1.

On or around March 9, 2007, Beechwood, as borrower, entered into a construction loan agreement with National, as lender, in the principal amount of $230,000. The purpose of this loan was to fund the completion of a model home at Beechwood Village on Lot 58. In consideration of and as inducement to the making of this loan, National, on March 9, 2007, obtained the Reardons' guaranty of Beechwood's obligations under the construction loan agreement. Their guaranty is memorialized in the document that was admitted as Exhibit 3 ("the Second Guaranty"). Both Jeanine and James admit that they signed this three-page document. Unlike Exhibit 1, Exhibit 3 is legible. In relevant part, it states:

> [T]he undersigned personally guarantee due fulfillment of all BORROWER's "OBLIGATIONS" (as hereinafter defined) to LENDER, together with all costs associated with enforcement of and collection of the OBLIGATIONS and this GUARANTY.
>
> 1. "OBLIGATIONS" as used in this GUARANTY means all present and future OBLIGATIONS of BORROWER to LENDER, direct or indirect, absolute or

[3] I need not and do not make findings as to whether James did in fact sign this document and, if not, how his signature came to be affixed to it and whether it was placed there with his authority.

> contingent, due or to become due, including without limitation, the prompt and seasonable performance and observance of all of BORROWER'S covenants, agreements and conditions under the following documents of even date herewith (the "LOAN DOCUMENTS"): an Acquisition and Construction Loan Note in the principal amount of [$230,000.00]; a Construction Loan Mortgage And Security Agreement And Assignment; and all other instruments securing or relating to any loan by LENDER to BORROWER or executed in connection therewith relative to a construction project at the property known as and/or located at Unit 58, Beechwood Village, Rockland, Massachusetts.
>
> 2. This GUARANTY shall operate as a continuing GUARANTY. The liability of the undersigned shall continue regardless of any reduction (except by payment hereunder) until the OBLIGATIONS have been paid or otherwise discharged. The OBLIGATIONS shall not be impaired by the death, termination, dissolution, bankruptcy, insolvency, business cessation, or other financial deterioration of BORROWER, or by any state of facts including without limitation the invalidity, irregularity, illegality, or unenforceability of, or any defect in any of the documents constituting the OBLIGATIONS, and any loss, sale, release, loss of value, or other change in the collateral for any of the OBLIGATIONS.

It is undisputed that all obligations of Beechwood under and related to the construction loan agreement and related documents have been paid in full. It is further undisputed that the extensions of credit to Beechwood for which National now seeks payment from the Reardons as guarantors were not made under the construction loan agreement.

On December 22, 2009, James and Jeanine filed their joint petition for relief under chapter 7 of the Bankruptcy Code. In the case thereby commenced, they received a discharge under 11 U.S.C. § 727(b). They sent no written notice of their bankruptcy filing to National or any of its agents. They did not list National as a creditor in any of their schedules of creditors. (I have no evidence that, at the time of the filing, Beechwood had outstanding debt to National.) In the schedule of executory contracts and unexpired leases that they filed in their bankruptcy case, they indicated that they had no executory contracts or unexpired leases and did not list a guaranty to National.[4] I have no evidence that the

[4] I make no implicit ruling that either guaranty was an executory contract or should have been listed here.

chapter 7 trustee ever became aware of either of the two guarantees that the Reardons gave to National, much less that he assumed either guaranty or consciously decided to assume or reject it.

On diverse dates after December 22, 2009—in 2010, 2011, and 2012—National sold goods to Beechwood on credit. Approximately ninety percent of the credit so extended has been paid, but a balance of $56,667 remains owing. On the basis of the Reardons' guarantees, National has demanded payment of this sum from the Reardons. The Reardons have denied liability, stating (among other things) that any liability they might otherwise have had under their guarantees for these postpetition advances of credit was subject to the discharge they received in bankruptcy.

**ARGUMENTS OF THE PARTIES**

National argues that the debt in question, all of which arises from postpetition advances of credit, cannot be subject to the Reardons' discharge because 11 U.S.C. § 727(b) limits the effect of the discharge to "debts that arose *before* the date of the order for relief under this chapter," meaning, in this instance, before the Reardons' filing of their bankruptcy petition. Relying on the case of *McClure-Johnson Company, Inc. v. Jordan (In Re Jordan)*, 2006 WL 1999117 (Bankr. M.D. Ala. 2006), National argues that, at least when the guaranty in question is a continuing guaranty, not restricted to specified transactions, a separate debt is deemed to arise, for purposes of § 727(b), upon each extension of credit to which the guaranty pertains. Here, all extensions of credit occurred after the bankruptcy filing. National contends that each of the two guarantees that the Reardons gave to National was continuing in nature.

With respect to the Second Guaranty, the Reardons respond that, by its terms, it was restricted in nature, not continuing. Therefore, they contend, any liability thereunder would be deemed to have arisen at the time the guaranty was given, regardless of when the guaranteed credit was extended, and was therefore subject to discharge in bankruptcy. With respect to the First Guaranty, the Reardons do not concede that it was a continuing guaranty, and they point out that it is illegible, such that its terms

cannot be established. They further contend that, even if this guaranty was continuing, National has not established that it relied on the guaranty in extending the credit in question; the Reardons, however, have not indicated how reliance is relevant to any matter before the Court. Lastly, the Reardons argue that even if this guaranty is continuing and gives rise to undischarged liability, that liability is limited to $5,000 by the legible credit limit on the first page of Exhibit 1.[5] The Reardons do not contend that either guaranty was an executory contract that, by operation of 11 U.S.C. § 365(d)(1), was rejected in their chapter 7 case by virtue of the trustee's non-assumption of the guaranty within sixty days of the filing.

**DISCUSSION**

In relevant part, a discharge issued under 11 U.S.C. § 727 "discharges the debtor from all debts that arose before the date of the order for relief under this chapter."[6] When a bankruptcy case is commenced by a voluntary joint petition for relief under chapter 7, the order for relief under chapter 7 is deemed to enter upon the debtors' filing of their joint petition. 11 U.S.C. § 302(a) ("The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter."). Therefore, as the parties recognize, the principal issue presented is whether the Reardons' liability under the guarantees, if any, for postpetition advances of credit is debt that arose before the date of the filing of their bankruptcy petition. This requires an inquiry into the meaning of "debt" in the Bankruptcy Code.

The groundwork has already been done:

> As defined and used in the Bankruptcy Code, "debt" means "liability on a claim," 11 U.S.C. § 101(12). And "claim," in turn, means "right to payment, whether or not such right is reduced to judgment, liquidated,

---

[5] The Reardons do not contend that either guaranty was an executory contract that, by operation of 11 U.S.C. § 365(d)(1), was rejected in their chapter 7 case by virtue of the trustee's non-assumption of the guaranty within sixty days of the filing. Accordingly, I do not address the issue.

[6] In its entirety, subsection 727(b) states: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title." 11 U.S.C. § 727(b).

> unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The Code thus defines "claim" broadly, including even those claims that remain contingent and, as such, may be difficult or impossible to quantify. *Woburn Associates v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1, 8 (1st Cir. 1992) ("*Hemingway*") (Congress defined claim "as broadly as practicable.").

*In re CD Realty Partners*, 205 B.R. 651, 655–56 (Bankr. D. Mass. 1997). "Congress deliberately included contingent claims in the definition and made provision for their estimation to permit the broadest possible relief in the bankruptcy court . . . and to ensure that virtually all obligations to pay money [would] be amenable to treatment in bankruptcy." *Id*. (internal quotations and citations omitted).

"Claim" thus includes even rights to payment that are contingent. This creates a line-drawing problem: "every future event and right to payment is to some extent contingent on some preconfirmation state of affairs, but not every postconfirmation right to payment was, prior to confirmation, a contingent claim." *CD Realty Partners*, 205 B.R. at 656. The Bankruptcy Code does not define "contingent." As the CD Realty court pointed out, "for the term to have meaning it must have limits." *Id*. "[T]o be a contingent claim, a postconfirmation right to payment must have some significant root in the preconfirmation past."

> After all, a contingent right to payment is, by definition, a right to payment that, because it is contingent, is not yet and may never be a right to payment. In the strangely appropriate language of philosopher Martin Heidegger, it might be said to exist somewhere on a continuum between being and nonbeing. At some point on that continuum, a right to payment becomes so contingent that it cannot fairly be deemed a right to payment at all.

*Id*. at 656. The challenge in each instance is to determine that point, to appraise the sufficiency of the prepetition root.

With respect to a debtor's liability under a prepetition guaranty for a postpetition extension of credit, the question is whether the debt arose when the guaranty was executed or when credit was later extended to the principal obligor. On this issue, the cases on point are few. National has cited the case

of *In re Jordan*, 2006 WL 1999117, at *3 (Bankr. M.D. Ala. 2006), which is the only case to have addressed the issue at any length. In *Jordan*, the court stated that the question of when the debt arose is one of federal law, but its determination is informed by state law, and Alabama law treats a guaranty according to whether it is restricted or continuing. A restricted guaranty is one that concerns a single or limited number of specific transactions. A continuing guaranty, on the other hand, is one that simply makes the credit of the guarantor available for unspecified future transactions, akin to a line of credit or revolving credit account.

> [A] contract is continuing if it contemplates a future course of dealing during an indefinite period, or if it is intended to cover a series of transactions or a succession of credits, or if its purpose is to give to the principal debtor a standing credit to be used by him from time to time. A continuing guaranty covers all transactions, including those arising in the future, which are within the contemplation of the agreement. A continuing guaranty can include subsequent indebtedness without new consideration being given. *A continuing guaranty is, therefore, simply a divisible offer of a series of separate unilateral contracts, and contemplates a series of transactions between the debtor and the creditor rather than a single debt, and each transaction creates a new contract.*

38 Am.Jur.2d Guaranty § 20 (1999), as quoted in *In re Jordan*, 2006 WL 1999117, at *3 (emphasis added by *Jordan* court). In keeping with the state-law treatment of a continuing guaranty as giving rise to a divisible series of separate contracts, the *Jordan* court held that for purposes of §727(b), a debtor's liability under a continuing guaranty for a particular extension of credit should be treated as having arisen upon that extension of credit. When the credit is extended postpetition, the "debt" too is deemed to arise postpetition, even when the guaranty was executed prepetition. The court therefore held that the liability at issue in that case, under a continuing guaranty, arose after the bankruptcy filing and accordingly was not subject to the debtor's chapter 7 discharge.

I agree with the reasoning in *Jordan*. The question of when the debt arose is one of federal law as informed by state law. I further hold that under Massachusetts law, as under Alabama law and for the same reasons as articulated in *Jordan*, a continuing guaranty would be seen as giving rise to a divisible

series of individual transactions, with liability for each extension of credit arising at the time of its extension. Conversely, liability under a restricted guaranty—one that concerns a contemplated and specified extension of credit—arises, for purposes of § 727(b), upon execution of the guaranty.

National contends that each of the guarantees in question was of a continuing nature. The Reardons deny this as to the Second Guaranty and take no position as to the First. I begin with the Second Guaranty, the one whose terms are in evidence.

Under the Second Guaranty, the Reardons guaranteed "due fulfillment of all BORROWER's 'OBLIGATIONS' (as hereinafter defined) to LENDER." In its first numbered paragraph, the Second Guaranty goes on the define OBLIGATIONS to mean

> all present and future OBLIGATIONS of BORROWER to LENDER . . . under the following documents of even date herewith (the "LOAN DOCUMENTS"): an Acquisition and Construction Loan Note in the principal amount of [$230,000.00]; a Construction Loan Mortgage And Security Agreement And Assignment; and all other instruments securing or relating to any loan by LENDER to BORROWER or executed in connection therewith relative to a construction project at the property known as and/or located at Unit 58, Beechwood Village, Rockland, Massachusetts.

So far, the Second Guaranty is restricted to obligations arising under loan documents relative to the construction of Unit 58 of Beechwood Village. In its second numbered paragraph, the Second Guaranty goes on to state that "[t]his GUARANTY shall operate as a continuing GUARANTY," but this language does not extend the coverage of the guaranty to other obligations, and does not purport to further define, or to expand the definition of, OBLIGATIONS. The remainder of that paragraph makes clear that, by "continuing," it means only that the guaranty "shall continue regardless of any reduction (except by payment hereunder) until the OBLIGATIONS have been paid or otherwise discharged" and regardless of certain other circumstances. The parenthetical language—"except by payment hereunder"—makes clear that payment of the

OBLIGATIONS *would* cause the guaranty to terminate. For these reasons, I am well satisfied that the Second Guaranty was a restricted guaranty. Accordingly, any remaining liability thereunder was discharged.[7]

With respect to the First Guaranty, National contends that it is continuing in nature, not restricted, and therefore that the discharge does not apply to obligations thereunder. The Reardons take no position on this issue, but the burden of proof here is on them to show that the discharge applies to the debt in issue.[8] Exhibit 1, which is the sole copy of the First Guaranty that is in evidence, is illegible, both as to the terms of the guaranty and as to the terms of Beechwood's obligation as primary obligor. Nor has either party submitted other evidence as to whether the guaranty thereby given was restricted or continuing. I conclude that the Reardon's have not sustained their burden of establishing that this Guaranty was restricted or that obligations thereunder otherwise arose before the date of their bankruptcy filing. I conclude that the Reardons have failed to establish that their obligations under the First Guaranty as to postpetition extensions of credit are within the scope of their discharge.[9]

---

[7] National concedes that all obligations of Beechwood under the Construction Loan and other documents related to the construction of Unit 58 have been fully paid. Perhaps for that reason, National neither (i) contends that the discharge of remaining liability under this guaranty was invalid for failure of the Reardons to give them notice of their bankruptcy filing nor (ii) asserts that any such remaining liability is excepted from discharge by 11 U.S.C. § 523(a)(3).

[8] To be clear, the burden is always on a creditor to show that a debt that is otherwise in the scope of the discharge is excepted from it by 11 U.S.C. § 523(a). However, where a debtor interposes a chapter 7 discharge as an affirmative defense to enforcement of a particular debt, the burden is on the debtor to show that the debt is one within the scope of § 727(b)—in this instance, that it is "a debt that arose before the date of the order for relief" under chapter 7. 11 U.S.C. § 727(b).

[9] I make no determination as to what those obligations (if any) might be. I determine only that those obligations, whatever they may be, were not discharged in bankruptcy.

**CONCLUSION**

For these reasons, judgment shall enter for National as to the First Guaranty and for the Reardons as to the Second. National is free to proceed in a court of appropriate jurisdiction to enforce the First Guaranty against the Reardons as to extensions of credit made after their bankruptcy filing. I express no opinion on the merits of any such claim and will dismiss the same for lack of subject matter jurisdiction. The Reardons' discharge bars National from proceeding against the Reardons on the Second Guaranty.

Date: April 5, 2017

Frank J. Bailey
United States Bankruptcy Judge